UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

GREGORY W. QUEEN,

Plaintiff,

V.

DOBSON POWER LINE CONST. CO. and INSURANCE CO. OF NORTH AMERICA d/b/a CIGNA INS. CO.,

Defendants.

Civil Action No. 6: 05-648-DCR

**MEMORANDUM OPINION AND ORDER**

*** *** *** ***

This matter is pending for consideration of Plaintiff's Motion to Remand. [Record No. 3] Because Defendants failed to timely remove the action, the Court will grant Plaintiff's Motion to Remand. [Record No. 3] The remaining motion for an extension of time will be denied as moot. [Record No. 7]

**I. BACKGROUND**

Greg Queen, now 31, graduated from high school in 1993. In August 1993 (six weeks into his first full-time job), while working for Dobson Power Line Construction Company (Dobson), Queen was seriously injured when a utility pole that was being cut by a co-worker fell and struck him on the head and back. The injuries resulted in permanent paralysis at the chest level. Queen temporarily received worker's compensation; however, due to malpractice by his attorney, he failed to timely file a claim for permanent benefits. As a result, his benefits ceased in December 1995.

Queen brought this action in the Laurel Circuit Court in May 1999 seeking two insurance payments which Insurance Company of North America (INA) had paid to Dobson following Queen's injury. On August 25, 2000, INA served Queen with its responses to his discovery requests. Those disclosures included a copy of a 1994 Master Insurance Policy, which INA contended was substantially the same as the policy which would have been in effect at the time of the accident in 1993.

On March 3, 2004, Circuit Judge Lewis Hopper overruled Dobson's motion to dismiss. Judge Hopper concluded that Queen's claim was not barred by the Worker's Compensation Act because it qualified under "other benefit plans" exceptions. Judge Hopper then set a trial date of November 21, 2005. On November 17, 2005, Judge Hopper granted partial summary judgment for Queen. The Defendants removed the action to this Court on November 18, 2005.

**II. ANALYSIS**

The burden of establishing jurisdiction is upon the defendant as the removing party. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 330 (6th Cir. 1989). Ordinarily, the existence of federal jurisdiction must be determined from the face of the plaintiff's complaint. *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934 (9th Cir. 1993). A defendant "cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (U.S. 1987).

### A. Removal following Adverse State Court Judgment

Under the "complete pre-emption" doctrine, the Supreme Court has concluded that the pre-emptive force of a statute is sometimes so extraordinary that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (U.S. 1987). Benefit cases normally fall into the category of cases which are completely pre-empted under ERISA. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983).

Notwithstanding the above rules, a defendant may waive the right to remove an action to federal court by taking actions in state court, after it is apparent that the case is removable, that manifest the defendant's intent to have the cased adjudicated in state court and abandon the right to a federal forum. One such action would be arguing and losing an issue in state court. *Ohio v. Doe, 433 F.3d 502* (6th Cir. 2006); *citing Rosenthal v. Coates*, 148 U.S. 142 (1893). In this context, removal would operate as an appeal of an adverse state court decision. *Id.* The Supreme Court has stated that "we think it clear that Congress did not intend, by the expression 'before trial,' to allow a party to experiment on his case in the State court, and, if he met with unexpected difficulties, stop the proceedings, and take his suit to another tribunal." *Removal Cases*, 100 U.S. 457, 473 (1879).

"The defect of untimeliness in removal cases in not jurisdictional, but merely 'modal and formal.'" *Manas y Pineiro v. Chase Manhattan Bank, N.A.*, 443 F. Supp. 418, 420 (S.D.N.Y. 1978) (citing *Ayers v. Watson*, 113 U.S. 594, 598 (1885)). Therefore, it is within the discretion of the federal court to determine whether the case has proceeded too far in the state court.

In the present action, the Defendants filed their notice of removal exactly one day after Judge Hopper granted the Plaintiff's motion for partial summary judgment. Judge Hopper ruled, "in sum, that Dobson received $150,000 from these two accidental death and dismemberment policies, all of which should have gone to Queen." [Record No. 3, Ex. 8] Judge Hopper proceeded to determine that Kentucky law prohibited Dobson from having any insurable interest in the "life or body" of Queen. *Id.* Coming as close to the start of trial as this action does, and so immediately on the heels of an adverse grant of partial summary judgment, the Court believes that the Defendants are effectively trying to "game the system" in contravention of clear Supreme Court language to the contrary.

Because defendants cannot use removal as a de facto appeal, once the Defendants have shown their clear intent to adjudicate the case in state court (as they did here), they can no longer seek removal.

**B. Timeliness of Removal**

Notice of removal must be filed within 30 days after the defendant receives "a copy of an amended pleading, motion, order or other paper" from which it may be ascertained that the case is removable. *See* 28 U.S.C.S. § 1446(b). "Other paper" includes any other document that is part and parcel of the state court proceedings. *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992). This time limit is to be strictly construed. *United States ex rel. Walker v Gunn*, 511 F2d 1024 (9th Cir. 1975).

The Defendants allege that the first time they received notice that Queen was seeking to collect the money which INA had originally payed to Dobson as a "payment for the benefit of

an employee" was when Queen filed a response to defendants' summary judgment in state court. This pleading included a recently disclosed (from INA to Queen) copy of the insurance contract actually in effect at the time of the accident. [Record No. 8] Defendants' logic is that prior to this pleading, the benefits were payable to Dobson and not Queen, so there was no employee welfare benefit plan to give rise to ERISA removal. However, once Queen filed his response claiming that the payment was due to Queen as an employee benefit, The Defendants assert that they had 30 days to seek removal.

This argument fails for two reasons. First, the Defendants claim they could not anticipate Queen would claim that the benefits under the contract should be payable to him until he asserted the same in his October 26 pleading[1] ignores the fact (admitted by the Defendants) that INA was in possession of the 1989 Policy the entire time. It was INA who disclosed the 1994 Master Policy, and INA who stated that the policy in effect in 1993 was substantially similar. Certainly, INA cannot claim to have been surprised by the filing of the October 26, 2005, pleading by the Plaintiff which incorporated this document. Moreover, as the disclosing party, the Defendant was aware of the difference in language and its potential significance well before the Plaintiff filed his pleading.

Second, and perhaps more directly, the Defendants' claim that the October 26, 2005, pleading was the first pleading from which to ascertain that the Plaintiff was seeking the payment as a "benefit to an employee" is not supported by logic. The Defendants argue that

---

1 Until October 2005, both parties operated under the belief that the policy in effect in 1993 was similar to the 1994 Master Policy which INA disclosed to Queen earlier in discovery. That policy provided that payments for "any loss" were payable to the subscriber (*i.e.*, Dobson). The 1989 version actually in effect in 1993 provided for payment to Dobson for "loss of life".

under the 1994 Policy, "all benefits would be payable to Dobson." [Record No. 8] They contend that it was not until the disclosure of the 1989 Policy that Queen alleged that the payment of benefits should have been to "the employee, Queen, and not Dobson." *Id.*

The Defendants go on to explain that if the benefits were payable to Dobson (and not Queen), there was no "employee benefit welfare plan under ERISA and this case could not have been removed." *Id.* However, the Defendants fail to acknowledge that, under their logic, there was also no cause of action. Queen's lawsuit was predicated on his contention that the money should have been paid to him, not to Dobson. The Defendants have been aware that Queen sought the payments which INA paid to Dobson since the day this lawsuit was filed.

The Defendants also attempt to explain the logical inconsistency by arguing that the claims Queen originally advanced for recovery under the Kentucky Unfair Claims Settlement Practices Act gave no notice of any possible ERISA claim. *Id.* In support, they note that some of the relief sought by Queen, including punitive and consequential damages, are not available in an ERISA action. However, this argument cannot overcome the clear language in the Plaintiff's original complaint in which Queen seeks "additional benefits pursuant to a master policy" for "the benefit of. . . employees" as a result of the workplace accident. [Record No. 9]; [Record No. 3, Ex. 2]

It is true that Queen's original argument centered on whether Dobson could have an insurable interest in the life or health of an employee. However, since Dobson had already paid the premiums on the policy, INA would have to make a payout. The only question was to whom. Queen's initial argument that the payments should have gone to him as a benefit paid

as the injured employee because Dobson had no insurable interest in his health gave defendants ample notice that this case was arguably pre-empted by ERISA.

Ultimately, it is irrelevant whether Queen believed his cause of action was one which could have been pursued under ERISA. The relevant inquiry is whether is was discernable from his complaint that ERISA might pre-empt those claims. The Defendants allege that the filing of the October 26, 2005, pleading substantially changed the nature of Queen's action, but this Court is unpersuaded. The revelation of the 1989 Policy, which had been in INA's possession during the entire pendency of the lawsuit, strengthened Queen's claims – it did not substantially change the action. In short, the time for removal expired long before the Defendant's filed their notice of removal.

## III. CONCLUSION

For the reasons discussed above, it is hereby **ORDERED** as follows:

(1) The Plaintiff's Motion to Remand [Record No. 3] is **GRANTED** and this action is **REMANDED** to the Laurel Circuit Court.

(2) The Plaintiff's motion for an extension of time to conduct a Rule 26 conference [Record No. 7] is **DENIED** as moot.

This 6th day of February, 2006.




**Signed By:**

***Danny C. Reeves*** DCR

**United States District Judge**